**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JESSE ANDREWS, | ) | |
| on behalf of himself and all other | ) | |
| plaintiffs similarly | ) | |
| situated | ) | |
| v. | ) | Case No.: 3:17-cv-50171 |
| | ) | |
| ROCKFORD PROCESS CONTROL, INC. | ) | |
| Defendant. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT AND FOR**
**CERTIFICATION OF CLAIMS PURSUANT TO F.R.C.P.23 FOR SETTLEMENT**

Plaintiff Jesse Andrews ("Plaintiff"), on behalf of himself and all other similarly situated, for his Unopposed Motion for Preliminary Approval of Class Action Settlement and for Certification of Claims Pursuant to Fed. R. Civ. Pro. 23 for Settlement states as follows:

## I. INTRODUCTION

Plaintiff seeks preliminary approval of the Class Action Settlement Agreement, which will resolve the Fair Labor Standards Act ("FLSA"), 29 U.S.C. *et seq.,* and Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1 claims of approximately 41 people against Rockford Process Control, Inc.

This case is relatively straightforward: when Plaintiff and the Class worked overtime, the overtime rate paid to them failed to fully take into account a shift differential premium (extra pay for working the night shift) paid to them as allegedly required by 29 U.S.C. § 207(e). As such, Plaintiff alleges that he and the Class were shorted approximately 63 cents per overtime hour worked. The range of recovery per Class member will be from $ 17 to $ 1938 with an average payment of $ 560.13.

1

To the Defendant's credit, it acknowledged the shortfall and pursuant to a settlement agreement, agreed to pay: (a) 100% of the overtime deficiency, (b) liquidated damages of an amount equal to the overtime deficiency under the FLSA, and (c) interest at 2% per month under the IMWL. Defendant also agreed to pay reasonable attorney fees so that the Class members do not have any attorney fees deducted from their recovery. Finally, the current employees have benefited because, approximately two (2) months after the filing of the lawsuit, the Defendant began including the shift differentials in the payment of overtime. As such, in addition to receiving back wages, they are now being paid correctly.

For the reasons below, Plaintiff requests this Court enter an order, in the form attached hereto as Exhibit 1, that (1) grants preliminary approval of the Proposed Class Action Settlement; (2) certifies the State Law Class for settlement purposes; (3) approves the proposed notice program; (4) sets a date for Final Approval of Hearing; and (5) sets a date for submission of the final approval of papers as set forth in the attached Preliminary Approval Order. (Exhibit 1) In support of this motion, Plaintiff states as follows:

## II. OVERVIEW OF CLAIMS

Rockford Process Control, Inc. ("Rockford") utilized an overtime calculation for all employees that did not properly calculate the employee's overtime rate. Shift differentials should be added to an employee's normal rate of pay to determine the employee's regular rate of pay before calculating one and one-half times the regular rate of pay for all hours worked over forty (40). There are 41 employees affected by this deficiency.

To give a specific example, as alleged in the Complaint, Plaintiff's regular rate of pay is $16.41 per hour and he was paid at the overtime rate of $23.99 per hour. However, under the FLSA

and IMWL Plaintiff should have been paid at the over-time rate of $24.62 per hour ($16.41 X 1.5). This resulted in a 63 cents shortfall in his overtime rate.

Plaintiff alleged that in determining the "regular" rate calculation for overtime purposes, the Defendant failed to capture all remuneration paid to Plaintiff and other similarly situated plaintiffs. *See e.g.*, 29 U.S.C. § 207(e)("the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee" with certain statutory exclusions); 29 CFR § 778.207("The Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials"). 29 CFR § 778.207[1].

### III. SUMMARY OF SETTLEMENT TERMS

A copy of the Parties' Settlement Agreement is attached as Exhibit 2. As indicated above, following the commencement of this lawsuit, the Defendant adjusted its pay practice and is now including shift differentials in determining the overtime rate of pay. As such, the Class (to the extent they are current employees) already have benefited and will continue to benefit from this lawsuit going forward. For purposes of preliminary approval, the following paragraphs summarize the Settlement Agreement's key terms:

The Class shall receive:

1. 100% of the value of overtime they should have been paid had the shift differential been properly included in their regular rate of pay for overtime purposes.
2. An amount equal to 100% of the value stated above in part 1.
3. An amount equal to 2% of unpaid overtime wages per month for every month the amount was unpaid. This amount reflects the interest allowed under the IMWL.
4. The parties are in agreement to have reasonable attorneys' fees and costs paid over and above the amounts paid to Plaintiffs, this allows Plaintiffs to keep all compensation allocated to them.

---

[1] The analysis for the IMWL claim is essentially the same as that for the FLSA claim. *Skelton v. Am. Intercontinental Univ. Online*, 382 F.Supp.2d 1068, 1074 (N.D. Ill. 2005)(the same analysis applies to claims made under the IMWL and FLSA).

5. Right of Reversion: Defendant has no right to have money returned to them if a check goes uncashed for any other reason (other than if a Class member opts out). If a check is uncashed, the money will be paid to the Illinois Treasurer's unclaimed property program.

In exchange for their respective settlement payments, the Class (excepting any persons who may choose to opt-out) shall waive their claims related to the failure to include shift differentials in their overtime pay.

To assure notice to the Class, the Parties agree to share the duties of claims administration. Most of the Class members are current employees. Each current employee will be given a copy of the Class Notice when they are at work. In addition, the Defendant will post the Class Notice in a prominent location in the Rockford breakroom. As to former employees, they will each be sent a copy of the Class Notice by Plaintiff's counsel at their last known address according to the Defendant's records. Likewise, to the extent that the Defendant has emails addresses for the current and former employees, each of them (whether current or former employees) will be emailed notice by the Plaintiff. Finally, the notice will be posted on Plaintiffs' counsel's Internet site. The Parties' proposed notice to the Class is attached to the Settlement Agreement at Exhibit 3.

Settlement Payments shall be paid by Defendant to Class Members who do not timely opt-out by no later than 14 days after final approval of the Settlement Agreement. If any checks are returned for any reason, and the parties do not locate a better address, their check shall be voided 180 days after it is sent. 15 days after checks become void, Defendant shall prepare a replacement check to the Illinois Treasurer, Unclaimed Property Division to be held by the Treasurer until claimed.

4

Class Counsel will apply to the Court for an award attorneys' fees and costs at the time of the filing of the Final Approval papers. Said amount shall be in addition to, not subtracted from, Settlement Payments to Class Members. Unless the Parties are able to agree on a reasonable attorney fee award, Plaintiffs will file a fee petition with the final approval Motion or within 30 days thereafter.

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

**A.    Class Action Settlement Approval Process**

Approval of class action settlements is typically a three-step process:

(1) preliminary approval of the settlement at an informal hearing;

(2) dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) a "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34.

This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the district court to fulfill its role as the guardian of class interests. *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, at § 11.22, *et seq*. With this motion, the Parties request that the Court take the first step in the settlement approval process by granting preliminary approval of the Settlement.

The purpose of preliminary evaluation of a proposed class action settlement is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.,* § 11.25 at 11-36, 11-37. The decision to preliminarily approve a proposed settlement is in the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985 ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"). If so, the court should grant preliminary approval of the settlement, authorize the Parties to give notice of the proposed Settlement to Class Members, and schedule a formal fairness hearing. *Id.*; *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). At the formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

## B. The Criteria For Preliminary Settlement Approval Are Satisfied

Ultimately, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002) (internal citation omitted). At the preliminary approval stage, however, a court's task is to determine whether class settlement is within the range of possible approval. *American Int'l Group, Inc. v. ACE INA Holdings, Inc.*, Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011). Utilizing a five-factor test, a court must consider: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of

discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006); *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). Further, a court must not focus on an individual component of the compromise, but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). The Settlement Agreement here meets these criteria and clearly falls "within the range of possible approval." *Cook,* 1997 U.S. Dist. LEXIS 1090, at *24-25 (citation omitted).

**1.     Strength of Plaintiff's Case as Compared to the Amount of the Settlement and Allocation of the Settlement Payment**

Here, there is a full recovery for the Plaintiff and Class. A key consideration in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendant's offer. *See Isby*, 75 F.3d at 1199. However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, in deciding whether to preliminarily approve a settlement, a district court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing the plaintiffs' claims. *Id*. A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker,* 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally

7

inadequate"). Plaintiffs believe that this case is an excellent result for Class Members since they are getting 100% of the available relief to them for their claims. Additionally, Plaintiff had not yet obtained class certification. The Defendant's had a defense in this case that they relied upon their payroll company which made the mistake. By settling these claims, the Plaintiffs are assured of a recovery.

**2.      Complexity, Length, and Expense of Further Litigation**

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendant would continue to vigorously defend the case. As discovery is in the early stages, significant attorneys' fees and costs would be expended by all Parties in investigating the claims further. Further litigation would certainly result in dispositive motions, and the possibility of appeals. Additional litigation would increase expenses and would not reduce the risks of litigation to the Settlement Class. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019; *see also Great Neck Capital*, 212 F.R.D. at 409-10. Accordingly, the remaining burden, expenses, and risks for the Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense. "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474–75 (S.D.N.Y. 2013).

**3.      At This Preliminary Stage, There is No Opposition to the Settlement**

8

The Plaintiff supports the settlement, as do his Counsel and Defendants. At this preliminary stage, Plaintiff's Counsel is unaware of any opposition to the settlement.

**4.      Opinion of Counsel**

Plaintiff's Counsel is experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. In Plaintiff's Counsel's opinion, the Settlement is fair, reasonable and adequate. It is appropriate for the Court to place significant weight on the endorsement of this Settlement by Class Counsel. Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims, the value of the claims and the time costs, as well as the expense of trials and appeals. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d at 1020; *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). "[J]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted).

**5.      The Settlement Was the Result of Arm's Length Negotiations Without Any Hint of Collusion.**

The Settlement was the result of adversarial, arm's length negotiations. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020. Such arm's-length negotiations conducted by competent counsel

constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair."). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *See Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996). The Court should therefore find that the Settlement meets the requirements of and was the result of arm's-length bargaining.

## V. THE PARTIES PROPOSED NOTICE PROGRAM

The notice protocol identified in the Settlement Agreement provides proper notice to affected individuals. "Rule 23(e)(1)(B) requires the Court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at § 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985). The Parties' proposed notice procedure meets the requirements of Rule 23.

## VI. SCHEDULING OF A FINAL APPROVAL HEARING IS APPROPRIATE

The last step in the Settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation. The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e). The Parties request that the Court set a date for a hearing on final approval.

## III. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

### A. PROPOSED CLASS ACTION DEFINITION

The "Class" shall consist of all current and former Rockford Process Control, Inc. employees that earned a shift differential and worked any amount of overtime in the same work week since June 8, 2014. The Class is ascertainable and it consists of those 41 persons who are identified in the Settlement Agreement.

### B. The Plaintiff Class Meets All Four Requirements of FRCP 23(a).

#### a. Numerosity

The Federal Rules of Civil Procedure require that the class be so large as to render joinder of all parties impracticable. Fed. R. Civ. P. 23(a)(1). There are 41 Class members. Even if this is not a remarkably large class, it is sufficient. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)(concluding that "generally . . . more than forty [is] adequate"); *see Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 336 (N.D. Ill. 2006)("[C]ourts in this circuit have concluded that 40 or more class members is generally sufficient to fulfill the numerosity requirement."); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir.1967) (18 members sufficient); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D.Ill.1996) (18 members sufficient when damages flowed from resolution of single question); *Rosario v. Cook County*, 101 F.R.D. 659, 661 (N.D.Ill.1983) (20 members sufficient when the "administrative difficulty, delay and distraction involved in requiring" each of the class members to "intervene, join, or initiate a separate suit" was great and unwarranted). As such, the numerosity standard is met.

#### b. Commonality

The second requirement for class certification, as set forth in Rule 23(a)(2), is that there

11

must be "questions of law or fact common to the class." "[E]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2562 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 2556. "Rule 23(a)(2) does not demand that every member of the class have an identical claim," and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified. *Spano v. Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). The common question here is whether a nondiscretionary shift differential should be included in regular rate of pay for overtime calculation purposes.

### c. Typicality

Plaintiff meets the typicality requirement because all employees, including the named plaintiff, were under the same uniform, company-wide payment policy set by Defendant. "[T]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011); *see also Rosario*, 963 F.2d at 1018 ("we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)"). Defendant utilizes the same mathematical formula to determine overtime compensation for all employees, which fails to include the shift differential into the regular rate of pay. As such, Plaintiff's claims arise out of the same course of conduct and the same payment practices.

### d. Adequacy

The final requirement for class certification under Rule 23(a) is that "the representative

parties will fairly and adequately protect the interests of the class." In the instant case, Plaintiff Andrews worked as a welder for Defendant and was paid under the same allegedly unlawful practice as all other employees. He has been employed by Defendant for the last three years, and continues to be employed by Defendant. He has been cooperative throughout this litigation. As the Supreme Court has noted, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, Plaintiff's claims pose no conflicts whatsoever with those of the other Class members because his claims and those of the entire Class turn on the existence and implementation of Defendants' wage policies, which did not include the shift differential into regular rate of pay for overtime calculation purposes. Therefore, Plaintiff's financial interests are not in conflict with those of other Class members. Adequate representation also requires competent and experienced counsel able to conduct the litigation. *Amchem*, 521 U.S. at 625; *Eggleston*, 657 F.2d at 896. While experience in class action litigation is a factor favoring counsel's qualification, general litigation skills and federal court experience are also pertinent. Fed. R. Civ. P. 23(g). Plaintiff's counsel has submitted an affidavit supporting this Motion and has substantial experience in employment litigation and class action litigation. (Exhibit 4)

**E. Plaintiff Meets the Requirements of FRCP 23(b)(2).**

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiff meets the requirements of Rule 23(b)(2).

**F. Plaintiff Meets the Requirements of FRCP 23(b)(3).**

FRCP 23(b)(3) requires a showing that: (1) issues common to the class "predominate" over

those affecting individual class members; and (2) prosecuting the litigation as a class action is "superior" to other available methods of proceeding. *Amchem*, 521 U.S. at 615. When making this inquiry, the court must examine the interests of the class members in individually controlling a separate action, the extent and nature of any litigation already commenced by class members, the desirability of the forum and the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(A-D). Considering these factors, both the "predominance" and the "superiority" requirements are met in the present action.

### a. Predominance

The standard to determine whether common questions predominate is a flexible one, focusing on whether the common issues are a significant enough part of the case that proceeding as a class action makes sense. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623; *see also*, *e.g., Jenkins* v. *Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986)("In order to 'predominate,' common issues must constitute a significant part of the individual cases."); *In re Playmobil,* 35 F. Supp. 2d at 245 ("The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions to render the class action valueless."). Not all questions of law or fact need to be identical as long as there are common questions at the heart of the case. *Hubler,* 193 F.R.D. at 577. The significant issue is whether "the class claims arise out of the same legal or remedial theory." *Id.* The predominance requirement is satisfied. The most significant factual issue is whether Defendants properly paid their employees. This will boil down to an analysis of whether the non-discretionary shift differential was included in the rate of pay for overtime calculation purposes.

The only issue in the instant case that could be individual to each class member is damages. But it is well-established that individual damages issues do not defeat a finding that common liability

issues predominate under Rule 23(b)(3). *Gomez v. PNC Nationl Bank Assn,* 2014 WL 3640798, 12 c 1274 (N.D. Ill. 2014)(class certification appropriate even if some members did not perform unpaid work because this relates to damages); *Keele v. Wexler,* 149 F.3d 589 (7th Cir. 1998).

### b. Superiority

The specific factors set forth in Rule 23(b)(3) dictate the superiority of this case proceeding as a class action. When inquiring into the matters pertinent to the findings of predominance and superiority, the court must examine the interests of the class members in individually controlling a separate action, the extent and nature of any litigation already commenced by class members, the desirability of the forum and the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(A-D).

There is no compelling reason to adjudicate 41 identical wage lawsuits in separate actions. Because of the uniformity of the factual and legal claims of the Class members, it would be needlessly repetitive if the Class members were forced to prosecute their claims individually. A class action in the case at bar meets the superiority test of Rule 23(b)(3) because the difficulties and expense of prosecuting this type of litigation would be counterproductive for both parties. With multiple claims, Defendants' legal expenses (owed to attorneys for both sides) could be greater than the overall damages at stake in the class action.

### VII. CONCLUSION

For the foregoing reasons, Plaintiff prays for an order (in the form attached hereto as Exhibit 1):

. (i) Granting preliminary approval of the Settlement in this matter;
. (ii) Certifying the proposed Class;
. (iii) Approving the form and content of the Notice to be sent to Class Members;
(iv) Appointing Named Plaintiff, Jesse Andrews, as Class Representative;

.       (v)  Approving the appointment of Plaintiff-Class Counsel;

.       (vi)  Scheduling a final fairness hearing;

.       (vii)  Approving the FLSA settlement; and

.       (viii)  Granting such other relief as the Court deems appropriate under the circumstances.

Dated: September 26, 2017                    Respectfully Submitted,


                                        By:  _____ /s/ David Fish _____
                                             One of Plaintiffs' Attorneys

David Fish
Kim Hilton
John Kunze
The Fish Law Firm, P.C.
200 E 5th Ave Suite 123
Naperville, IL 60563
T: 630-355-7590
F: 630-778-0400