**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| JESSE ANDREWS, )<br>on behalf of himself and all other )<br>plaintiffs similarly )<br>situated )<br>        v. )<br>)<br>ROCKFORD PROCESS CONTROL, INC. )<br>        Defendant. ) | Case No.: 3:17-cv-50171 |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEY FEES**

Plaintiff Jesse Andrews ("Plaintiff"), on behalf of himself and all other similarly situated, for his Unopposed Motion for Preliminary Approval of Class Action Settlement:

**I.    INTRODUCTION**

Plaintiffs seek final approval of the Class Action Settlement Agreement, which will resolve the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1 *et seq*, of 41 people against Rockford Process Control, Inc. ("Rockford"). Timely notice was sent to each individual included in the settlement and no objections were raised to the Class Action Settlement. For the reasons stated below, Plaintiffs request that the Court grant final approval of the Parties' Class Action Settlement Agreement and Award of Attorney Fees and enter the proposed order attached as **Exhibit A**.

**II.    THE LITIGATION**

The Parties' Settlement Agreement resolves the pending litigation against Defendant. The following is an abbreviated summary of the litigation. At issue in this lawsuit was the method used by the Defendant in computing the Plaintiffs overtime compensation. When Plaintiff and the Class worked overtime, the overtime rate paid to them failed to fully take into account a shift

1

differential premium (extra pay for working the night shift) paid to them as allegedly required by 29 U.S.C. § 207(e).

Rockford was alleged to have used an overtime calculation for all employees that did not properly calculate the employee's overtime rate. Plaintiffs alleged that shift differentials should be added to an employee's normal rate of pay to determine the employee's regular rate of pay before calculating one and one-half times the regular rate of pay for all hours worked over forty (40).

To give a specific example, as alleged in the Complaint, Plaintiff's regular rate of pay is $16.41 per hour and he was paid at the overtime rate of $23.99 per hour. However, under the FLSA and IMWL Plaintiff should have been paid at the over-time rate of $24.62 per hour ($16.41 X 1.5). This resulted in a 63 cents shortfall in his overtime rate.

Plaintiffs alleged that in determining the "regular" rate calculation for overtime purposes, the Defendant failed to capture all remuneration paid to Plaintiff and other similarly situated plaintiffs. *See e.g.*, 29 U.S.C. § 207(e)("the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee" with certain statutory exclusions); 29 CFR § 778.207("The Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials"). 29 CFR § 778.207[1].

### III. SUMMARY OF SETTLEMENT TERMS & PRELIMINARY APPROVAL ORDER

**A. Overtime Compensation:**

This case resulted in a particularly good outcome for the Plaintiffs because they are receiving 100% of the alleged overtime due to them plus liquidated damages (under the FLSA) and interest (under the IMWL). Furthermore, Rockford's current employees had the incorrect

---

[1] The analysis for the IMWL claim is essentially the same as that for the FLSA claim. *Skelton v. Am. Intercontinental Univ. Online*, 382 F.Supp.2d 1068, 1074 (N.D. Ill. 2005)(the same analysis applies to claims made under the IMWL and FLSA).

computation corrected on a going forward basis. Following commencement of this lawsuit, Rockford modified its allegedly illegal pay practices so that the current employee Plaintiffs now have their regular rate properly computed.

A copy of the Parties' Settlement Agreement is attached hereto as **Exhibit B.** On September 28, 2017, the Court granted preliminary approval of the Parties' Settlement Agreement. (ECF # 23) ("Preliminary Approval Order"). The following paragraphs summarize the Settlement Agreement's key terms and results since the Preliminary Approval Order was entered.

As indicated above, following the commencement of this lawsuit, the Defendant adjusted its pay practice and is now including shift differentials in determining the overtime rate of pay. As such, the Class (to the extent they are current employees) already have benefited and will continue to benefit from this lawsuit going forward. For purposes of preliminary approval, the following paragraphs summarize the Settlement Agreement's key terms as to compensation for overtime:

The Class shall receive:

1. 100% of the value of overtime they should have been paid had the shift differential been properly included in their regular rate of pay for overtime purposes.
2. An amount equal to 100% of the value stated above in part 1.
3. An amount equal to 2% of unpaid overtime wages per month for every month the amount was unpaid. This amount reflects the interest allowed under the IMWL.
4. The parties are in agreement to have reasonable attorneys' fees and costs paid over and above the amounts paid to Plaintiffs, this allows Plaintiffs to keep all compensation allocated to them. The parties have agreed to the payment of attorney fees and costs in the amount of $20,500.

5. Right of Reversion: Defendant has no right to have money returned to them if a check goes uncashed for any other reason (other than if a Class member opts out). If a check is uncashed, the money will be paid to the Illinois Treasurer's unclaimed property program.

### B. Scope of Release

As set forth in the Settlement Agreement, in exchange for their respective settlement payments, the Class (excepting any persons who may choose to opt-out) shall waive their claims related to the failure to include shift differentials in their overtime pay.

### C. Notice

The Parties shared the duties of claims administration. Most of the Class members are current employees. Each current employee was given a copy of the Class Notice when they were at work. In addition, Rockford posted the Class Notice in the Rockford breakroom.

As to former employees, they were each sent a copy of the Class Notice by Plaintiff's counsel at their last known address according to the Defendant's records.

Likewise, to the extent that the Defendant had email addresses for the current and former employees, they were also emailed notice by the Plaintiff's Counsel.

Finally, the notice was also posted on Plaintiffs' counsel's Internet site.

### D. Payment

Assuming approval, Settlement Payments shall be paid by Defendant to Class Members by no later than 14 days after final approval of the Settlement Agreement. If any checks are returned for any reason, and the parties do not locate a better address, their check shall be voided 180 days after it is sent. 15 days after checks become void, Defendant shall prepare a replacement check to the Illinois Treasurer, Unclaimed Property Division to be held by the Treasurer until claimed.

### E. Attorney Fees

Here, unlike the typical class action case, no attorney fees are being taken out of the Class recovery because the Defendant agreed to pay these fees separately. While the recovery amount here was not particularly large, plaintiffs' lawyers would not sue for the recovery of wages if they were not incentivized by the recovery of attorney fees. "The whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery." *Millea v. Metro–N. R. Co.,* 658 F.3d 154, 169 (2d Cir.2011) (emphasis in original); *cf. Williams v. First Gov't Mortgage & Investors Corp.,* 225 F.3d 738, 747 (D.C.Cir.2000) (affirming an award of almost $200,000 on recovery of $8,400 recovery in District of Columbia Consumer Protection and Procedures Act case); *In re InPhonic, Inc.* 674 F.Supp.2d 273, 281 (D.D.C.2009) (awarding $483,753.37 in fees and costs on a $39,000); *Johnson v. G.D.F., Inc.*, 07 C 3996, 2014 WL 463676, at *1 (N.D. Ill. Feb. 5, 2014)(awarding over $115,000 in fees on a wage claim of $1,000); *Driscoll v. George Washington Univ.,* 55 F. Supp. 3d 106, 114 (D.D.C. 2014).

Here, the parties engaged in arms-length negotiations concerning the payment of attorney fees. The fees were only agreed upon after the underlying settlement was reached as to payments to the Class and after notice went out. Here, Class Counsel seeks, and the Defendant has agreed to pay, $20,500 for the reimbursement of attorney fees and costs. Attached as **Exhibit C** is the Declaration of David Fish supporting the request for attorney fees.

### IV. THE COURT SHOULD GRANT FINAL APPROVAL

#### A. Class Action Settlement Approval Process

Approval of class action settlements is typically a three-step process:

> (1) preliminary approval of the settlement at an informal hearing;
>
> (2) dissemination of mailed and/or published notice of the settlement to all affected class members; and

5

>  (3) a "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the district court to fulfill its role as the guardian of class interests. *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, at § 11.22, *et seq.* At the formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. With this motion, the Parties request that the Court take the last step in the settlement approval process by granting final approval of the Settlement.

  **B.  The Parties Have Satisfied the Requirements of Rule 23 and the Court's Notice Procedures Set Forth in the Preliminary Approval Order**

In the Preliminary Approval Order, the Court determined that the form and content of the Class Notice was appropriate under Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States and any other applicable laws. (ECF # 23 at par. 3).

Rule 23(c)(2)(B) requires the Court to direct the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). As the Supreme Court has held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id.* Where the names and addresses of class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id*. at 175.

The parties cooperated to provide personal notice to current employees and via first class U.S. mail, postage pre-paid, to former employee's last-known physical address, as reflected in

Defendant's records, which were provided to Class Counsel during the Litigation. In addition, for the employees who had email addresses according to the Defendant's records, additional email was provided. The Parties' efforts to effectuate notice to the Class meet the requirements of Rule 23(c)(2)(B).

### C. Final Approval is Appropriate Pursuant to Rule 23 Because the Settlement is Fair, Adequate, and Reasonable

Ultimately, "the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002) (internal citation omitted). Utilizing a five-factor test, a court must consider: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006); *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). Further, a court must not focus on an individual component of the compromise, but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1149 n.6 (N.D. Ill. 1997); *Great Neck Capital Appreciation Inv. P'Ship, L.P. v. Pricewaterhouse Coopers*, 212 F.R.D. 400, 410 (E.D. Wis. 2002). For the following reasons, the class action settlement is fair, adequate, and reasonable, and not a product of collusion and therefore should be finally approved.

1. **Strength of Plaintiffs' Case as Compared to the Amount of the Settlement and Allocation of the Settlement Payment**

A key consideration in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendants' offer. *See Isby*, 75 F.3d at 1199. However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); *Hiram Walker,* 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

Plaintiffs believe that this case is an excellent result for Class Members, especially in light of the fact that the settlement represents 100% of what they could hope to recover at trial. Additionally, given that most of the Class was comprised of current employees who tend not to opt in to a Collective Action against their current employer, the fact that they are getting FLSA liquidated damages is really more than they would have received had they not opted in.

It should further be noted that unlike many cases where attorney fees take a substantial portion of the recovery that was obtained for the Class and Collective, lawyer fees are not coming out of the Class recovery. *Compare Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) (noting that it is the norm to have 1/3 of the fund paid to the lawyers).

Additionally, Plaintiffs had not yet obtained class certification and still faced a motion for decertification by the Defendants. By settling these claims, the Plaintiffs are assured of a recovery.

2. **Complexity, Length, and Expense of Further Litigation**

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendants may have vigorously defended the case. As discovery is in the early stages, significant attorneys' fees and costs would be expended by all Parties in investigating the claims further. Further litigation would certainly result in dispositive motions, and the possibility of appeals. Additional litigation would increase expenses and would not reduce the risks of litigation to the Settlement Class. *See Isby*, 75 F.3d at 1199; *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1019; *see also Great Neck Capital,* 212 F.R.D. at 409-10. Accordingly, the remaining burden, expenses, and risks for the IWPCA Class Members would be substantial as continued litigation would require resolution of complex issues at considerable expense. "Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 474–75 (S.D.N.Y. 2013).

### 3. There is No Opposition to the Settlement

The Plaintiff supports the settlement, as do Plaintiffs' Counsel and Defendants. Moreover, Plaintiffs' Counsel is not aware of any opposition to the settlement.

### 4. Opinion of Counsel

Plaintiffs' Counsel is experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement. In Plaintiffs' Counsel's opinion, the Settlement is fair, reasonable and adequate. It is appropriate for the Court to place significant weight on the endorsement of this Settlement by Class Counsel. Counsel exercised their experience based on an intimate knowledge of the facts of

9

the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims and value of the claims and the time costs, as well as the expense of trials and appeals. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d at 1020; *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). "[J]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted); *Grove v. Principal Mutual Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001).

### 5. The Settlement Was the Result of Arm's Length Negotiations Without Any Hint of Collusion

The Settlement was the result of adversarial, arm's length negotiations that took place between counsel. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020. Here, the arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair."). In the absence of any evidence of collusion, this factor favors final approval of the settlement. *See Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996). The Court should therefore find that the Settlement meets the requirements of and was the result of arm's-length bargaining.

    **C.**    **The Proposed Class and its Representatives are Appropriate**

To be certified, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). For the reasons stated in the Motion for Preliminary Approval and Class Certification, the proposed Class satisfies the Rule 23(a) requirements of numerosity, typicality, commonality, and adequacy of representation; questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and, a class action is superior to other available methods of resolving the controversy.

**V.**    **CONCLUSION**

For the foregoing reasons, the Court should grant final approval of the Settlement, certify the IMWL Class for settlement purposes only pursuant to Federal Rule of Civil Procedure 23, and enter the Parties' proposed final approval order.

Dated: November 28, 2017                      Respectfully Submitted,

                                                               By:   /s/ David Fish          .
                                                                      One of Plaintiffs' Attorneys

David Fish
Kimberly Hilton
John Kunze
The Fish Law Firm, P.C.
200 E. 5th Avenue, Suite 123
Naperville, IL 60563
(630) 355-7590